**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────────

**MICHAEL P. STRATTON, Individually**
**and as Administrator of the Estate of**
**Julie L. Stratton, Deceased,**

                                        **Plaintiff,**               **11-CV-0074A(Sr)**

**v.**

**THOMAS M. WALLACE, et al.,**

                                        **Defendants.**

─────────────────────────────────

**DECISION AND ORDER**

         This matter was referred to the undersigned by the Hon. Richard J.

Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and

report upon dispositive motions.  Dkt. #13.


         Currently before me is plaintiff's motion to disqualify attorney Kathleen J.

Martin and her current law firm, Goldberg Segalla LLP, from representing the

defendants in this action due to Ms. Martin's prior employment as an attorney in the law

office of Francis M. Letro, counsel for plaintiff, and her work on behalf of plaintiff during

the course such employment.  Dkt. #29.  Plainitff also moves to preclude the same law

firm from representing both defendant Thomas Wallace and defendant Great River

Leasing, LLC due to a conflict of interest. Dkt. #29.  For the following reasons, plaintiff's

motion is granted.

## FACTUAL BACKGROUND

On December 12, 2009, defendant Thomas Wallace, acting in the course of his employment with defendant Millis Transfer, Inc., drove a tractor trailer owned by Great River Leasing LLC, into a disabled motor vehicle on the New York State Thruway, causing the death of the occupant of that vehicle, Julie Stratton.  Defendant Wallace is currently serving a sentence of 3 to 9 years incarceration following his plea of guilty to charges of second degree manslaughter and his admission to driving in excess of federal regulations limiting commercial driving hours and to viewing online pornographic movies at the time of the collision.

Plaintiff engaged the law office of Francis M. Letro, Esq. in December of 2009.  Attorney Kathleen Martin had been employed as an associate of Mr. Letro since November of 1999 and was assigned to assist Mr. Letro with this matter.  Dkt. #29-1, ¶¶ 5-6.  Mr. Letro affirms that

> Ms. Martin worked specifically on the Stratton file since intake in December 2009, interviewing witnesses, working with a private investigator, speaking with the client and the clients' family concerning confidential matters, conducting pre-action discovery, communicating with defense's counsel, Albert J. D'Aquino, Esq., appearing in New York State Supreme Court on pre-action discovery issues and preparing pleadings.  Ms. Martin had multiple conversations with Michael Stratton during which personal and confidential information was exchanged.  Ms. Martin even met with Michael Stratton in his home as part of her representation in the case.  Ms. Martin's work on the case was not fleeting or tangential.  Ms. Martin was actively involved in all aspects of the case up until her departure from the law office of Francis M. Letro.

Dkt. #29-1, ¶ 7. Mr. Letro further affirms that Ms. Martin had access to the file during

her entire time while working as an associate with the law office of Francis M. Letro and

that she drafted the Summons and Complaint.  Dkt. #29-1, ¶ 9.  Plaintiff affirms that

> on various occasions I spoke personally about the case with
> Attorney Martin, face to face at Mr. Letro's law offices.
> Additionally, on one occasion I spoke about the case with
> Attorney Martin when she visited me at my home during
> which time we had a lengthy and emotional discussion
> concerning personal and confidential matters pertaining to
> my family.  I've also spoken personally with Ms. Martin on
> the telephone on several occasions, individually and with Mr.
> Letro.  Our discussions involved the basis for our lawsuit, the
> circumstances surrounding the fatal crash and the resultant
> harm.

Dkt. #29-2, ¶ 4.  Plaintiff does not consent to Ms. Martin's representation of the

defendants.  Dkt. #29-2, ¶ 6.


Ms. Martin denies possessing confidential information about the case or

plaintiff and recounts minimal involvement in this matter.  Dkt. #32-16.  She specifically

denies any involvement in the damages aspect of the case, affirming that the only facts

she is aware of relating to "the damages aspect of the case are those generally known

by the public through widespread and on-going national media coverage of this case."

Dkt. #32-16, ¶ 35.  However, Ms. Martin recounts a brief meeting with plaintiff at his

home in March of 2010 to obtain his signature on a Notice of Claim as well as efforts to

identify defendants and investigate liability, including state court practice to obtain and

preserve electronic data and other evidence from the tractor trailer, service of

subpoenas to obtain and thereafter review 911 tapes, scheduling inspections of the

vehicles and communication with a trucking expert and professional engineer.  Dkt.

#32-16, ¶¶ 28-29 & 31.  Ms. Martin also drafted the complaint in this action.  Dkt. #32-

16, ¶ 31.  Ms. Martin's employment with the law office of Francis M. Letro ended in March of 2011.  Dkt. #29-1, ¶ 9.

In May of 2011, defense counsel Albert D'Aquino telephoned Mr. Letro and informed him that his law firm, Goldberg Segalla LLP, wanted to hire Ms. Martin. Dkt. #29-1, ¶ 10.  Mr. Letro and Mr. D'Aquino recall the substance of that conversation differently.  Dkt. #29-1, ¶ 10 & Dkt. #32, p.9.  Ms. Martin commenced employment with Goldberg Segalla, LLP in June of 2011.  Dkt. #29-1, ¶ 12.  Goldberg Segalla LLP affirms that "Ms. Martin will have no contact with the Stratton matter and will never discuss any aspect of it with anyone at Goldberg Segalla LLP."  Dkt. #32, p.9.  Ms. Martin also affirms that she has not, nor would she ever, discuss this matter with anyone other than to alert Goldberg Segalla LLP to her involvement in this matter at her place of prior employment.  Dkt. #32-16, ¶ 36.

## DISCUSSION AND ANALYSIS

**Attorney Conflict**

Plaintiff argues that Goldberg Segalla, LLP must be disqualified from representing defendants because Ms. Martin's prior representation of plaintiff creates a conflict of interest which is imputed to the firm.  Dkt. #29-4, pp.4-15.

Goldberg Segalla, LLP argues that disqualification is not necessary because two of the defendants – Thomas Wallace and his employer, Mills Transfer,

Inc. – will admit negligence and have offered their full self-insured retention limits of liability and full insurance policy limits amounting to $2,000,000, while the remaining defendants – seven Wisconsin corporations and six Millis brothers who hold officer or board positions with the corporations – are immune from liability pursuant to 49 U.S.C. § 30106, commonly known as the Graves Amendment.  Dkt. #32, ¶¶ 6 & 8.  As a result, defendant argues that the scope of remaining material issues in this matter has been limited so as to negate any possibility that Ms. Martin possesses any relevant client confidences.  Dkt. #32, ¶ 9.

        "The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process."  *Hempstead Video, Inc. v. Incorporated  Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005).  Such motions are generally considered with disfavor in this circuit because of their potential to interfere with a "client's right freely to choose his counsel" and because such motions "are often interposed for tactical reasons" and "inevitably cause delay."  *Evans v. Artek Sys., Corp.*, 715 F.2d 788, 791 (2d Cir. 1983).  However, "in the disqualification situation, any doubt is to be resolved in favor of disqualification."  *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975).  "The disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court."  *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72-73 (2d Cir. 1990).

        Although the standard of professional conduct in federal courts is a matter of federal law, in exercise of its discretion, courts look for guidance from the American

Bar Association's ("ABA's"), Model Rules of Professional Conduct as well as state disciplinary rules. *Hempstead Video,* 409 F.3d at 132. New York has adopted the ABA's Model Rules of Professional Conduct, which provide, in pertinent part, that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Model Rules of Prof'l Conduct R. 1.9(a) (2010) *and* 22 N.Y.C.R.R. Part 1200, Rule 1.9(a).

Thus, in cases of successive representation, the Court of Appeals for the Second Circuit has "held that an attorney may be disqualified if: (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client." *Hempstead Video,* 409 F.3d at 133. "The purpose of the 'substantial relationship' test is 'to prevent any possibility, however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client's disadvantage.'" *Brown & Williamson Tobacco Corp. v. Pataki,* 152 F. Supp.2d 276, 282 (S.D.N.Y. 2001), *quoting Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973). "[I]f a substantial relationship is established, the presumption of access to confidences prevails even

though the 'confidential' information may be publicly available."  *Id.; see Emle Indus.,*
478 F.2d at 572-73 ("client's privilege in confidential information disclosed to his
attorney is not nullified by the fact that the circumstances to be disclosed are part of a
public record, or that there are other available sources for such information, or by the
fact that the lawyer received the same information from other sources.").

        In the instant case, there is no dispute but that Ms. Martin was an
associate of the law office of Francis M. Letro at the time that this action was
commenced and that she was subsequently hired as an associate by Goldberg Segalla,
LLP, which represents the defendants in this action.  Moreover, this is not a case where
Ms. Martin's involvement in plaintiff's lawsuit was peripheral.  To the contrary, Ms.
Martin was the associate assigned to plaintiff's case, had access to plaintiff's case file,
conducted pre-action discovery, met with plaintiff in his home, and drafted the
complaint.  Where, as here, "it can reasonably be said that in the course of the former
representation the attorney *might* have acquired information related to the subject
matter of his subsequent representation, it is the court's duty to order the attorney
disqualified."  *Emle Indus.,* 478 F.2d at 571 (internal citation omitted); *see Government
of India v. Cook Indus., Inc.,* 422 F. Supp. 1057, 1059-60 (S.D.N.Y. 1976) ("The law is
clear that if the former action and the present action are 'substantially related' and the
attorney's involvement in the former case was more than peripheral, then there is an
irrebuttable presumption that the attorney had access to confidential information."), *aff'd*
569 F.2d 737 (2d Cir. 1978).

-7-

"An attorney's conflicts are ordinarily imputed to [her] firm based on the presumption that 'associated' attorneys share client confidences." *Hempstead Video,* 409 F.3d at 133. However, this presumption of shared confidence may be rebutted under appropriate circumstances to avoid indiscriminate and mechanical application of the disciplinary rules. *Papyrus Tech. Corp, v. New York Stock Exch., Inc.*, 325 F. Supp.2d 270, 278 (S.D.N.Y. 2004). "The touchstones of the imputation inquiry are the significance of the prohibited lawyer's involvement in and knowledge of the former client's confidences or secrets." *Id.* The court should also consider the size of the firm, the relationship between the disqualified attorney and the firm, physical or technological separation and any other circumstances that might affect the risk of disclosure of confidential information, whether intentional or inadvertent. *In Hempstead Video*, for example, the Court of Appeals recognized that "in appropriate cases and convincing facts, isolation – whether it results from the intentional construction of a 'Chinese Wall,' or from *de facto* separation that effectively protects against any sharing of confidential information - can[] adequately protect against taint." 409 F.3d at 138. In *Cheng v. GAF Corp.,* in contrast, the Court of Appeals expressed concern that given the small size of the conflicted attorney's new firm, "there exists a continuing danger that  [the conflicted attorney] may unintentionally transmit information he gained through his prior association with [plaintiff's firm] during his day-to-day contact with defense counsel." 631 F.2d 1052, 1058 (2d Cir. 1980), *vacated by* 450 U.S. 903 (1981) (decisions on motions to disqualify are not appealable prior to final judgment in underlying litigation); *See Filippi v. Elmont Union Free Sch. Dist. Bd. of Ed.*, 722 F. Supp.2d 295, 308

(E.D.N.Y. 2010) (collecting cases doubting the effectiveness of screening procedures in small firms).

Applying these considerations to the instant case, the Court finds that disqualification of Goldberg Segalla LLP is warranted.  As discussed above, Ms. Martin's involvement in this matter on behalf of plaintiff was not inconsequential – she conducted pre-action discovery, investigated potential defendants and drafted the complaint.  Despite defendant's argument that liability is not an issue, defendants plan to challenge the liability of 13 of 15 defendants identified by Ms. Martin as tortfeasors in this action and Ms. Martin's role in drafting the complaint suggests knowledge of plaintiff's strategy with respect to these defendants. Given plaintiff's declination of the offer of $2,000,000 to settle this matter, the scope of damages remains at issue, and regardless of Ms. Martin's actual knowledge with respect to damages, her role as the associate working with Mr. Letro in this case – having access to the file and contact with plaintiff – raises an unacceptable risk of even an unconscious awareness of potential weaknesses in plaintiff's case. The lead defense attorney in the matter, Mr. D'Aquino, is co-chair of the general litigation practice group in which Ms. Martin practices, a group which includes less than forty attorneys across the firm's multiple offices.  Moreover, Ms. Martin and Mr. D'Aquino are both in the Buffalo office.  While the court has no doubt as to the integrity of all of the lawyers involved in this matter, the appearance of impropriety which arises from the facts presented cannot be overcome.  As this litigation progresses, plaintiff should not be placed in the position of wondering whether

defendants' discovery requests, deposition questions, motions or trial strategies are linked in any way to the knowledge prior counsel brought to her new firm.

**Graves Amendment Conflict**

Plaintiff also argues that the same law firm cannot represent both defendant Thomas Wallace and defendant Great River Leasing, LLC, because Great River Leasing, LLC is seeking to avoid vicarious liability under New York Vehicle and Traffic Law § 388 by virtue of 49 U.S.C. § 30106, commonly known as the Graves Amendment.  Dkt. #29-1, ¶¶ 49-50 & Dkt. #29-4, pp.15-18.

Goldberg Segalla, LLP responds that Mr. Wallace's criminal conviction establishes that Mr. Wallace's negligence was the sole cause of this accident and argues that plaintiff's allegation that the leasing company had knowledge that Mr. Wallace was viewing pornography while driving is preposterous, thereby negating any basis for disqualification.  Dkt. #32, ¶¶ 48-49.

49 U.S.C. § 30106, commonly known as the Graves Amendment, expressly preempts the vicarious liability provisions of section 388 of New York's Vehicle and Traffic Law for claims commenced after August 10, 2005, by eliminating vicarious liability where the owner of the vehicle is engaged in the trade or business of renting or leasing motor vehicles and there is no negligence or criminal wrongdoing on the part of the owner.  Where the Graves Amendment is asserted as a defense, New York courts have recognized that the "driver has the right to an advocate who will

zealously investigate and assess whether there is a basis to contest the applicability of the Graves Amendment, and if so, vigorously oppose the defense." *Graca v. Krasnik*, 20 Misc.3d 1127, 2008 WL 2928557, at *3 (N.Y. Sup.Ct. July 28, 2008).  In other words, "a law firm representing both the leasing company and the driver has an inherent conflict of interest[1] where the law firm seeks to move for dismissal of the complaint only as against the leasing company since the driver would be left bearing full liability." *Vinokur v. Raghunandan,* 27 Misc.3d 1239, 2010 WL 2553864, at *4 (N.Y. Sup. Ct. June 25, 2010).  Such a concern may be alleviated where there is no allegation of independent liability against the owner of the vehicle. *See Drake v. Karahuta*, No. 08-CV-771, 2010 WL 376388, at *3 (W.D.N.Y. Jan. 25, 1010) (finding no conflict of interest asserting a Graves amendment defense where plaintiff failed to allege any basis for independent negligence against owner and discovery was complete); *but see Vinokur*, 2010 WL 2553864, at *4 (finding "law firm has an inherent conflict of interest in representing both the leasing company and the driver, regardless of whether the only claim against the leasing company is vicarious liability based upon Vehicle and Traffic Law § 388.").

---

[1] The ABA's Model Rules of Professional Conduct prohibits lawyers from representing multiple clients where the client's interests are directly adverse or there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client unless the lawyer reasonably believes that he will be able to provide competent and diligent representation to each affected client; the representation is not prohibited by law; the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation; and each affected client gives informed consent, confirmed in writing. Model Rules of Prof'l Conduct R. 1.7(a) (2010).

The court finds the analysis in *Graca* and *Vinokur* persuasive.  Moreover, *Drake* is inapplicable inasmuch as plaintiff's complaint does allege independent liability against Great River Leasing, LLC.  Accordingly, separate counsel should be retained to represent Mr. Wallace/Millis Transfer and those defendants asserting the Graves amendment as a defense.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Dkt. #29), is granted.


**SO ORDERED.**


**DATED:**      **Buffalo, New York**
                **July 31, 2012**

                              *s/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**