**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**
_____

MICHAEL P. STRATTON, Individually and
as Administrator of the Estate of
JULIE I. STRATTON, Deceased,

                        Plaintiff,
     v.                                            11-CV-74-A(HKS)

THOMAS M. WALLACE;                           **DECISION AND ORDER**
MILLIS TRANSFER, INC.;
GREAT RIVER LEASING, LLC.;
MIDWEST HOLDING GROUP, INC.; *et al.*,

                        Defendants.
_____

      On December 12, 2009, while driving a tractor-trailer owned by Great River Leasing, LLC, Thomas Wallace struck a disabled car carrying Julie Stratton. Ms. Stratton was killed by the collision. Her husband, Michael Stratton, brought this suit against a number of defendants, including Wallace's employer, Millis Transfer, Inc.; the tractor-trailer's owner, Great River Leasing, LLC; and the parent of both Millis Transfer and Great River, Midwest Holding Group, Inc.

      The Plaintiff and Great River cross-moved for summary judgment on the question of whether Great River is protected from vicarious liability by the Graves Amendment, a federal statute that, in general terms, provides that companies that lease or rent vehicles may not be held vicariously liable for the negligence of those to whom their vehicles are leased or rented. Magistrate Judge Schroeder, to whom the

1

Court referred the case, issued a Report and Recommendation that recommends granting Great River's motion for summary judgment and denying the Plaintiff's motion for partial summary judgment.

However, for the reasons stated below, the Court does not adopt the Report and Recommendation.  The Court concludes that the narrow legal question presented here—how to construe a parenthetical phrase in the Graves Amendment—is answered by the Graves Amendment's plain text.  Therefore, the Graves Amendment does not preclude holding Great River vicariously liable for the alleged negligence of its affiliate, Millis.  Great River's motion for summary judgment is denied and the Plaintiff's motion for partial summary judgment is granted.

## Background

The underlying facts of this case are straightforward.  On December 12, 2009, Julie Stratton's car hit a deer while Ms. Stratton was driving on Interstate 90 near Pembroke, New York.  While Ms. Stratton was sitting in her disabled vehicle on the side of the road, one of the defendants, Thomas Wallace, who was driving a tractor-trailer owned by another of the defendants, Great River Leasing, struck Ms. Stratton's car and killed Ms. Stratton.

Ms. Stratton's husband, the Plaintiff in this case, filed a complaint in New York Supreme Court against a number of defendants, including, as is relevant to the present motion, the truck's driver, Thomas Wallace; Wallace's employer, Millis

Transfer, Inc.; the truck's owner, Great River Leasing, LLC; and the common owner of both Millis and Great River, Midwest Holding Group, Inc.  The Defendants removed the case to this Court based on the Court's diversity jurisdiction.  *See* Dkt. No. 1.[1]

The motion before the Court turns on the manner in which the Defendants have organized their businesses.  Defendants Great River Leasing, LLC and Millis Transfer, Inc. are both wholly-owned subsidiaries of Defendant Midwest Holding Group, Inc.; Midwest is the sole member of Great River and the sole shareholder of Millis.  *See* Dkt. No. 65 at 2.  Great River, which has no paid employees, "has always operated exclusively as a vehicle and trailer purchase and leasing company."  *See* Dkt. No. 51 ¶ 12; Dkt. No. 56 ¶ 7.  Great River owned the tractor and trailer involved in the accident and leased both to Millis.  Dkt. No. 56 ¶¶ 6, 22.  Finally, Wallace was an employee of Millis "and has never been an employee of Great River."  Dkt. No. 47 ¶ 8; Dkt. No. 56 ¶ 17.  For the convenience of the reader, the relevant Defendants' relationships can be represented graphically as follows:

---

[1] The Plaintiff is a citizen of New York, and each of the defendants (except for Wallace) is either a citizen of Wisconsin or a company organized under Wisconsin law.  Wallace, who was watching pornographic films in the cab of his truck when he struck Ms. Stratton's car, Dkt. No. 36 at 2, pleaded guilty to second degree manslaughter as a result of the accident and is currently incarcerated in a New York prison.  *See* New York Dep't of Corrections and Community Supervision Inmate Lookup, located at http://nysdoccslookup.doccs.ny.gov/kinqw00, and last visited on July 23, 2014.  *See also Williams v. City of New York*, No. 07 Civ. 3764(RJS), 2008 WL 3247813, at *2 n.3 (S.D.N.Y. Aug. 7, 2008) (taking judicial notice of prisoner's current place of incarceration using DOCCS Inmate Lookup).  However, absent a showing otherwise, Wallace is presumed to remain a resident of his pre-incarceration residence, Ohio.  Dkt. No. 1 at 1-3.  *See Poucher v. Intercounty Appliance Corp.*, 336 F. Supp. 2d 251, 253 (E.D.N.Y. 2004) ("It is well established that a prisoner does not acquire a new domicile when he is incarcerated in a state different from his previous domicile. . . .  In some jurisdictions, the rule . . . has taken the form of an irrebuttable presumption.  However, in the Second Circuit . . . the presumption is rebuttable.")  (citations omitted).  The amount in controversy is easily greater than $75,000.  *See, e.g.*, Dkt. No. 1 at 4; Dkt. No. 47 at ¶ 6.



The Court referred the case to the Hon. H. Kenneth Schroeder, Jr. for all pre-trial matters. *See* Dkt. No. 13. The Plaintiff and Great River each filed motions for summary judgment, Dkt. Nos. 45 & 48, on the question of whether Great River is shielded from vicarious liability by the so-called Graves Amendment, 49 U.S.C. § 30106, which provides, in relevant part, as follows:

> **(a) In general.**--An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if--
>
>     **(1)** the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
>
>     **(2)** there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

In short, the Plaintiff's argument is: (1) that Millis is alleged to be negligent; (2) that Millis is an "affiliate" of Great River within the definition of the Graves Amendment; (3) that, therefore, subsection (a)(2) of the Graves Amendment is not

satisfied; and (4) that, accordingly, the Graves Amendment does not shield Great River from vicarious liability.

Magistrate Judge Schroeder found that the Graves Amendment, which is not a model of clarity, "results in an obvious ambiguity.  Does the statute apply to owners and affiliates who are engaged in the business of renting or leasing vehicles, or does it apply to owners who rent or lease vehicles to their affiliates?"  Dkt. No. 65 at 8.  Magistrate Judge Schroeder resolved this ambiguity by turning to the Graves Amendment's legislative history, concluding that the Amendment "was plainly intended to eliminate vicarious liability for owners engaged in the business of renting or leasing motor vehicles who are free from negligence and, likewise, affiliates of owners who are engaged in the business of renting or leasing motor vehicles and are likewise free from negligence."  *Id.* at 9.  Magistrate Judge Schroeder accordingly recommends granting Great River's motion for summary judgment and denying the Plaintiff's motion for partial summary judgment.

The Plaintiff filed objections to the Report and Recommendation, Dkt. No. 66, and this Court held oral argument on May 27, 2014.  Because the Plaintiff's objections are to a recommendation on a dispositive motion, this Court reviews the Report and Recommendation *de novo.  See* 28 U.S.C. § 636.

## Discussion

Like a handful of other states, New York allows a vehicle's owner to be held vicariously liable for accidents involving the owner's vehicle, even when the owner

was not personally operating the vehicle at the time of the accident. *See* N.Y. Veh. & Traf. Law § 388. As is discussed later in this opinion, Congress, in response to the effect of such vicarious liability statutes on the rental car industry, inserted what is colloquially referred to as the Graves Amendment into the 2005 Safe, Accountable, Flexible, Efficient Transportation Equity Act. *See* 49 U.S.C. § 30106.[2]

Run-of-the-mill Graves Amendment cases—where the vehicle's owner and operator are related only by an arm's length contract—are generally simple. In such cases, the Graves Amendment provides that the owner is not liable for the driver's negligence so long as (1) the owner's business is leasing or renting vehicles; and (2) the owner was not negligent. *See, e.g.*, *Berkan v. Penske Truck Leasing Canada, Inc.*, 535 F. Supp. 2d 341, 345 (W.D.N.Y. 2008); *Green*, 605 F. Supp. 2d at 434; *Flagler v. Budget Rent-A-Car System, Inc.*, 538 F. Supp. 2d 557, 560 (E.D.N.Y. 2008). However, what differentiates this case from ordinary Graves Amendment cases is the fact that, here, the lessor and the lessee are related by more than just a lease agreement; in this case, the lessor and the lessee are owned by the same parent company. The Graves Amendment contemplates this situation by providing that the Amendment may also apply to a vehicle owner's "affiliate," which the Amendment defines as follows:

---

[2] A number of courts in this Circuit have held that the Graves Amendment preempts New York's vicarious liability statute when the vehicle in question was leased or rented by a company "engaged in the trade or business of renting or leasing motor vehicles." *Id.* § 30106(a)(2). *See, e.g.*, *Green v. Toyota Motor Creditcorp*, 605 F. Supp. 2d 430, 433-34 (E.D.N.Y. 2009); *Pacho v. Enterprise Rent-A-Car Co.*, 572 F. Supp. 2d 341, 350 (S.D.N.Y. 2008).

> **(1) Affiliate.**--The term "affiliate" means a person other than the owner that directly or indirectly controls, is controlled by, or is under common control with the owner. In the preceding sentence, the term "control" means the power to direct the management and policies of a person whether through ownership of voting securities or otherwise.

49 U.S.C. § 30106(d)(1). As noted above, Midwest Holding Group is the sole member of Great River and the sole shareholder of Millis. Thus, Great River and Millis are unquestionably "affiliates" as the Graves Amendment defines that term.

Therefore, reading the Graves Amendment as the Plaintiff argues the Court should, the Amendment would not apply in this case, because Great River is the owner of the truck that was involved in the accident, and, as noted above, Millis Transfer is an affiliate of Great River. Further, the Plaintiff alleges that Millis was itself negligent in this case. Thus, making the appropriate substitutions urged by the Plaintiff, the Graves Amendment would provide as follows:

> **(a) In general.**-- [Great River] shall not be liable under the law of any State . . . by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if--
>
> **(1)** [Great River or Millis] is engaged in the trade or business of renting or leasing motor vehicles; and
>
> **(2)** there is no negligence or criminal wrongdoing on the part of [Great River or Millis].

According to the Plaintiff, because subsection (a)(2) is not true—the Plaintiff alleges that Millis was negligent—the operative portion of the Graves Amendment does not apply on these facts. Great River, on the other hand, argues that because Great

7

River is the owner of the truck at issue—and thus, the party seeking to benefit from the Graves Amendment's protection—that subsections (a)(1) and (a)(2) of the Graves Amendment should be read to include only Great River, and not Great River's affiliate, Millis.  See Dkt. No. 68 at 5 ("The parenthetical 'or an affiliate of the owner' is not intended to be read with the sentence, but rather [to] be a substitute to the words 'owner' and 'person' that it appears adjacent to in the statute.").

Thus, as the parties all agree to at least some extent, the Graves Amendment's inconsistent placement of the parenthetical "(or an affiliate of an owner)" injects confusion into the statute.[3]  The issue ultimately boils down to the following: (1) whether the parenthetical "(or an affiliate of the owner)" in the Graves Amendment is intended to be a substitute for the word "owner"; or (2) whether the parenthetical is meant to be read in addition to the word "owner."  The Court concludes that the more natural interpretation of the Graves Amendment is to read the parenthetical in addition to, rather than in place of, the word "owner."  In other words, to immunize the owner from vicarious liability, the Court interprets subsection

---

[3]   The two conflicting cases that the parties point to as support for their respective positions—which, surprisingly, appear to be the only two Graves Amendment cases with similar facts—offer little guidance.  The first, Canal Insurance Co. v. Kwik Kargo, Inc. Trucking, Civil No. 08-439 (JNE/RLE), 2009 WL 1086524 (D. Minn. Apr. 21, 2009), offered as support for the Defendant's position, reached its conclusion with almost no analysis.  Id. at *5.  Further, the Court can find no indication as to whether the carrier company in Canal Insurance—the analogue to Millis—was itself negligent.  That allegation, of course, is critical in this case.  The case on which the Plaintiff primarily relies, Askew v. R&L Transfer, Inc., 676 F. Supp. 2d 1298 (M.D. Ala. 2009), offers more guidance, but Askew did not fully tackle the Graves Amendment's text and instead reached its conclusion based on the fact that there was "sufficient disputed evidence to defeat the [Graves] [A]mendment's requirement that there was 'no negligence . . . on the part of the owner (or an affiliate of the owner).'"  Id. at 1305 (quoting 49 U.S.C. § 30106).

(a)(2) to require that *both* the owner and the affiliate of the owner be free from negligence.

The Court reaches this conclusion by reading the Amendment as a whole and accounting for how the Amendment uses the parenthetical outside of subsection (a)(2). *See United Savings Ass'c of Tex. v. Timbers of Inwood Forest Ass'c, Ltd.*, 484 U.S. 365, 371 (1988) (noting that "[s]tatutory construction . . . is a holistic endeavor"). The operative paragraph of the Amendment provides, in relevant part, that "[a]n owner . . . shall not be liable under the law of any State . . . by reason of being the owner of the vehicle (or an affiliate of the owner)." If the Court were to read the "(or an affiliate of the owner)" parenthetical as the Defendant urges—that is, as a substitute for the word "owner," rather than in addition to the word "owner"— then the operative portion of the Amendment would be nonsensical. Under that interpretation, the Amendment would provide that "[a]n owner . . . shall not be liable under the law of any State . . . by reason of being an affiliate." The Graves Amendment would then accomplish nothing, because vicarious liability statutes hold owners liable solely because they are *owners*—not because they are affiliates.

Thus, if the Court reads the parenthetical in the operative paragraph as part of the sentence, rather than as a substitute for the word "owner," then the Court must read the parenthetical in the remainder of the statute in a similar fashion. *See AT&T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 408 (1999) (Souter, J., concurring in part and dissenting in part) ("As the first Justice Harlan once observed: 'it is a familiar rule in the interpretation of . . . statutes that a passage will be interpreted by reference to

9

that which precedes and follows it.'") (quoting *Neal v. Clark*, 95 U.S. 704, 708 (1877)) (some internal quotation marks omitted).  In other words, the parentheticals in subsections (a)(1) and (a)(2) must be read in addition to, not in the place of, the word "owner."[4]  This interpretation of the Graves Amendment, which treats the Amendment's parentheticals as commas, is consistent with the rules of good legislative drafting, which might explain the Amendment's somewhat awkward construction.  *See* Lawrence E. Filson & Sandra L. Strokoff, *The Legislative Drafter's Desk Reference* § 23.6 (2d ed. 2007) ("For the drafter, parenthetical expressions are the best available device for combining complicated ideas within a single sentence in a way that achieves clarity . . . .  Most parenthetical expressions could just as well be set off by commas instead, of course, and commas are generally better when the sentence involved is short and simple. . . .  [A] long sentence tends to be already full of phrases set off by commas, so that as new ones are added it is likely to become harder and harder for the reader to sort out the pieces.")

The Defendant is correct that this interpretation "require[s] that both the lessee and lessor be free of negligence" in order for the Graves Amendment to shield a vehicle's owner from vicarious liability.  Dkt. No. 68 at 5.  However, this interpretation does not result in an absurdity which necessarily renders the Graves Amendment

---

[4] The Defendant argues that this interpretation of subsection (a)(1) "would suggest that an owner may invoke the Graves Amendment regardless of whether it is in the trade or business of renting or leasing motor vehicles, so long as it is affiliated with a company that leases vehicles." Dkt. No. 68 at 5. However, this interpretation is incorrect. The operative paragraph of the Graves Amendment restricts the Amendment's protection to "owner[s] of a motor vehicle that rent[] or lease[] the vehicle to a person (or an affiliate of an owner)." Thus, regardless of the effect of subsection (a)(1), the Amendment's first sentence restricts the Amendment's protection to owners who are in the business of renting or leasing.

superfluous.  *See* Dkt. No. 65 at 8 n.4.  Under such a scenario, where both the owner and affiliated lessee were free of negligence, New York's vicarious liability statute could, depending on the facts, still apply.  New York's vicarious liability statute provides that "[e]very owner of a vehicle" is liable for injuries caused by the use of the vehicle "by every person using or operating the same with the permission, express or implied, of such owner."  N.Y. Veh. & Traf. Law § 388.  Thus, if the driver to whom the vehicle was entrusted were negligent, the owner would be vicariously liable regardless of whether the owner or the lessee standing in the middle of the lessor and the driver were also negligent.  The Graves Amendment would therefore not be superfluous under an interpretation that requires both the vehicle's owner and the owner's affiliate to be free of negligence.

Finally, this interpretation, which the Court reaches by analyzing the Graves Amendment's plain text, also leads to a result that is consistent with the Graves Amendment's legislative history.  The Court initially notes that to the extent that legislative history should be relevant to the task of statutory construction, this case is a poor candidate for doing so.  There were no Committee hearings or reports to give meaning to the Graves Amendment, nor was there any open debate that might shed light on the Amendment's awkward construction.  To the contrary, the entire substance of the Amendment's legislative history is contained in three pages of floor debate in the Congressional Record—at least half of which is objections— immediately before the House voted on the Amendment.  *See generally* 151 Cong. Rec. H1199-H1205 (daily ed. Mar. 9, 2005) (entirety of House debate and voting

history); *id.* at H1201 (statement of Rep. Conyers) ("It is also important to note that the issue of preempting state liability is under the jurisdiction of the Committee on the Judiciary, of which I am the Ranking Member, and no hearings have been held to examine the appropriateness of the language which would be included in the legislation should the amendment pass. It is irresponsible to allow this provision to be debated on the House floor without a committee of jurisdiction's careful review."). *See also Luperon v. N. Jersey Truck Ctr., Inc.*, No. 07 Civ. 9639(HB), 2009 WL 1726340,at *5 n.4 (S.D.N.Y. June 19, 2009) (noting that "[t]here were no hearings on the Amendment, and the only debate in the House of Representatives was all of twenty minutes long, immediately preceding the vote on the Amendment"). This provides little from which the Court can determine Congress's intent. Further, assuming that the Graves Amendment's scant legislative record is enough to tell the Court what the Amendment's purpose was, the Court is given further pause by the fact that both parties in this case have been able to quote passages of the limited legislative debate that are entirely consistent with their arguments. *See, e.g.*, Dkt. 66 ¶ 21; Dkt No. 68 at 8.

Because the Court reaches its conclusion based on the Graves Amendment's plain text, there is no need to rely on the Amendment's limited legislative record. *See Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1709 (2012) (noting that "reliance on legislative history is unnecessary in light of [a] statute's unambiguous language") (internal quotation marks omitted). Nonetheless, the parties both extensively use the Amendment's legislative history to support their own

12

interpretation of the Graves Amendment. The Court will therefore briefly examine the Amendment's history, appropriately wary of the assumption "[t]hat the views expressed in a . . . floor statement represent those of all the Members of that House." *Lawson v. FMR LLC*, 134 S. Ct. 1158, 1177 (2014) (Scalia, J., concurring in principal part and concurring in the judgment). Although selective quotations from the House debate should be discounted, the Amendment's entire history suggests that its drafters' intent seems to have been to protect rental and leasing companies from vicarious liability when their renters or lessees were involved in accidents. The opening statement of the Amendment's sponsor, Representative Graves, supports this conclusion. According to Representative Graves,

> Currently, a small number of States impose vicarious liability or limitless liability without fault, on companies and their affiliates simply because they own a vehicle involved in an accident. Whether or not the vehicle was at fault is completely irrelevant in these situations. These vicarious liability lawsuits cost consumers nationwide over $100 million annually.
>
> Vicarious liability laws apply where the accident occurs. It does not matter where the car or truck was rented or leased. Since companies cannot prevent their vehicles from being driven to a vicarious liability State, they cannot prevent their exposure to these laws and must raise their rates accordingly. These higher costs have driven many small companies out of business, reducing the consumer choice and competition that keeps costs down.

151 Cong. Rec. H1200 (daily ed. Mar. 9, 2005) (statement of Rep. Graves). The Amendment's co-sponsor made similar arguments. *See id.* at H1201 (statement of Rep. Boucher) ("Vicarious liability laws for rental cars in a handful of States drive up

costs for consumers nationwide by an average of $100 million annually.  These laws allow unlimited damages against companies that rent vehicles solely because the company owns the vehicle that is involved in the accident, not because the company has done anything wrong.  These companies are not negligent, they are not at fault, they could have done nothing to have prevented the accident.").

As a whole, these statements plainly demonstrate that the Graves Amendment was concerned with the apparent problem that commercial rental and leasing companies have no choice as to whom they rent their vehicles or into what state those vehicles are driven.  Thus, rental and leasing companies could find themselves vicariously liable for their renter's or lessee's negligence depending on whether the state into which the renter or lessee drove had a vicarious liability statute of the sort that New York has.  This is far different from the situation in which Great River finds itself.  There is no suggestion that Great River is constrained in the same manner as rental and leasing companies that hold themselves out to the general public.  That is, Great River is not required to lease its vehicles to all qualified customers.

Nonetheless, as the Court noted earlier, its use of legislative history merely supports an interpretation of the Graves Amendment that results from the Amendment's plain text. Based on that text, the Court concludes that the Graves Amendment requires both the vehicle's owner and the owner's affiliate—that is, both Great River and Millis Transfer—to be free from negligence in order for the Graves

Amendment to shield Great River from vicarious liability. The Court therefore grants the Plaintiff's motion for partial summary judgment.[5]

## Conclusion

For the reasons stated above, the Court does not adopt the Report and Recommendation. Therefore:

IT IS ORDERED that Defendant Great River, LLC's motion for summary judgment, Dkt. No. 45, is denied;

IT IS FURTHER ORDERED that Plaintiff's motion for partial summary judgment, Dkt. No. 48, is granted; and

IT IS FURTHER ORDERED that this case is referred back to Magistrate Judge Schroeder for further proceedings.

**SO ORDERED.**


DATED: July 31, 2014  
Buffalo, New York

s/Richard J. Arcara_____  
HONORABLE RICHARD J. ARCARA  
UNITED STATES DISTRICT JUDGE

---

[5] To be clear, the Court's decision does not address whether Millis was negligent or whether Great River will ultimately be held vicariously liable. For the reasons stated above, Great River's liability will depend on whether Millis was negligent, which is a question not currently before the Court.